**United States District Court**
**For the Northern District of California**

1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   JOHN RAY MENDY, MARY MENDY,              No. C-13-4180 MMC

12            Plaintiffs,                     **ORDER GRANTING DEFENDANTS'**
                                              **MOTION TO DISMISS; AFFORDING**
13      v.                                    **PLAINTIFFS LEAVE TO AMEND;**
                                              **VACATING HEARING**
14   CITY OF FREMONT, et al.,

15            Defendants.
     _____/

16

17        Before the Court is defendants' "Motion to Dismiss Plaintiffs' Complaint," filed

18   December 26, 2013.[1]  Plaintiffs John Ray Mendy ("J. Mendy") and Mary Mendy ("M.

19   Mendy") have filed opposition, to which defendants have replied.  Having read and

20   considered the papers filed in support of and in opposition to the motion, the Court deems

21   the matter appropriate for determination on the parties' respective written submissions,

22   VACATES the hearing scheduled for February 14, 2014, and rules as follows.

23   //

24   //

25   _____

26        [1]Defendants are the City of Fremont ("the City"), Fremont Police Department ("the
     Department"), former Chief of Police Craig Steckler ("former Chief Steckler"), Chief of
27   Police Richard Lucero ("Chief Lucero"), Community Service Officer Lori Codey ("CSO
     Codey"), Peace Officer Joel Luevano ("Officer Luevano"), Sergeant Jeffrey Campbell ("Sgt.
28   Campbell"), Sergeant Curtis Codey ("Sgt. Codey"), and Sergeant Matthew Bocage ("Sgt.
     Bocage").

**BACKGROUND**

Plaintiffs, who reside in Fremont, California, allege that beginning "on or about 2004 – 2005," there have been "at least 40 or so contacts between CSO Codey and [p]laintiffs" in which CSO Codey "either ticketed or caused the towing of [plaintiffs'] vehicles, in knowingly wrongful fashion."  (See First Amended Complaint ("FAC") ¶ 8.)  Plaintiffs also allege that one such contact occurred on May 17, 2012, and that, on said date, plaintiff M. Mendy, after "observing CSO Codey commence a towing," exited her home and "verbally (only) expressed her objections to the towing," as well as her "feelings regarding CSO Codey's perceived romantic/flirtatious overtures to her husband, [plaintiff] J. Mendy."  (See id.)  Plaintiffs further allege that Officer Luevano, who had "arrived in the street," ordered M. Mendy to "get back" and to "place her hands behind her back."  (See id.)  According to plaintiffs, although M. Mendy "obeyed," she was placed under arrest "in a deliberately forceful manner," was falsely accused of being "intoxicated," and was taken to jail, where she stayed "for at least four hours," after which time she was "released without the assertion of any violation of law."  (See id.)  Plaintiffs also allege that after M. Mendy had been "driven away," J. Mendy was "informed by one of the three City of Fremont police officers" at the scene that "every time they saw him (J. Mendy) they would draw a gun on him"; the three officers present were Officer Luevano, Sgt. Codey, and Sgt. Bocage.  (See id.)

Plaintiffs allege that, on June 12, 2012, they "went to the Department to personally register a complaint with Internal Affairs."  (See FAC ¶ 10.)  At that time, plaintiffs state, they were advised by Sgt. Campbell that former Chief Steckler "would made the final decision as to whether or not anyone would be subject to discipline."  (See id.)  According to plaintiffs, "no discipline was imposed."  (See id.)

Plaintiffs further allege that while they were at the Department, they were "informed" by an "as-yet unidentified supervisor of CSO Codey" that, if they proceeded with their complaint, "the Department would find something with which to criminally charge [p]laintiffs."  (See id.)  Plaintiffs allege they nonetheless requested an investigation into the

2

1  events occurring on May 17, 2012, and that Officer Luevano, Sgt. Campbell, Sgt. Codey,

2  and Sgt. Bocage thereafter "falsely represented the facts, events, and circumstances which

3  occurred on May 17, 2012 . . . to the Alameda County District Attorney's Office," which, on

4  June 25, 2012, filed a criminal complaint "falsely accusing" both plaintiffs of violating

5  § 148(a)(1) of the Penal Code.  (See id.)  The criminal case, plaintiffs allege, "culminat[ed]

6  in a favorable judicial dismissal" on December 18, 2012, "the day of trial."  (See id.)

7       Based on the above allegations, plaintiffs assert claims under 42 U.S.C. § 1983, as

8  well as a state law claim for malicious prosecution.

9  **LEGAL STANDARD**

10       Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

11  on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

12  cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

13  1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim

14  showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S.

15  544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by

16  a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.

17  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief

18  requires more than labels and conclusions, and a formulaic recitation of the elements of a

19  cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

20       In analyzing a motion to dismiss, a district court must accept as true all material

21  allegations in the complaint, and construe them in the light most favorable to the

22  nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

23  survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

24  as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

25  662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough

26  to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.  Courts

27  "are not bound to accept as true a legal conclusion couched as a factual allegation."  See

28  Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

3

1

**DISCUSSION**

2      By the instant motion, the City, the Department, former Chief Steckler, and Chief

3 Lucero seek dismissal of all claims alleged against them, specifically, the First through

4 Fourth Claims.  Additionally, CSO Codey, Officer Luevano, Sgt. Campbell, Sgt. Codey, and

5 Sgt. Bocage seek dismissal of one of the claims alleged against them, specifically, the

6 Fourth Claim.[2]

7      At the outset, the Court addresses plaintiffs' argument that the instant motion is

8 procedurally improper because "all named [d]efendants" filed an answer prior to filing the

9 instant motion.  (See Pls.' Opp. at 2-8.)  Contrary to plaintiffs' argument, not all defendants

10 have filed an answer; specifically, the City, the Department, former Chief Steckler, and

11 Chief Lucero have not filed an answer.  Further, although the remaining defendants did file

12 an answer, the portion of the motion to dismiss pertaining to those defendants is a

13 challenge to plaintiffs' standing to seek the relief sought in the Fourth Claim, and

14 jurisdictional challenges cannot be waived.  See United States v. Viltrakis, 108 F.3d 1159,

15 1160 (9th Cir. 1997) (rejecting argument that party had "waived its right to challenge

16 standing" because "jurisdictional issue of standing can be raised at any time, including by

17 the court sua sponte").

18      The Court next turns to the challenged claims.

19 **A. First Claim**

20      The First Claim, titled "Violation of Civil Rights - 42 U.S.C. § 1983," is, as pleaded,

21 brought against "all defendants."  (See FAC at 8:1-3.)  Defendants correctly observe that

22 the First Claim does not include allegations setting forth any basis for municipal liability,

23 and, consequently, argue the claim is subject to dismissal to the extent it is alleged against

24 the City and the Department, and also to the extent it is alleged against former Chief

25 Steckler and Chief Lucero, who have been named in their "official capacity."  (See FAC

26

27      [2]CSO Cody, Officer Luevano, Sgt. Campbell, Sgt. Codey, and Sgt. Bocage do not

28 seek dismissal of the other claims alleged against them, specifically, the First, Fifth, and
Sixth Claims.

1 ¶ 4); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (holding where claim is brought

2 against official in his "official capacity," claim is "treated as a suit against the entity").

3      In their opposition, plaintiffs clarify that the First Claim is brought against the

4 "individual defendants." (See Pls.' Opp. at 6:28.)  Further, plaintiffs state they are not

5 proceeding against Chief Lucero in his personal capacity. (See id. at 7:1-2.)  With respect

6 to former Chief Steckler, however, plaintiffs argue that because he allegedly "participat[ed]"

7 in causing false criminal charges to be brought against plaintiffs, the First Claim should

8 proceed against him. (See id. at 7:6-10.)  The FAC, however, includes no allegations that

9 former Chief Steckler played any role in the filing of the criminal charges, let alone that he

10 caused the charges to be filed for an improper purpose.

11      Accordingly, the First Claim is subject to dismissal to the extent it is alleged against

12 the City, the Department, former Chief Steckler, and Chief Lucero.

13 **B. Second Claim**

14      In the Second Claim, titled "Violation of Civil Rights – 42 U.S.C. § 1983 – Monell,"

15 plaintiffs allege a municipal liability claim.  Liberally construed, the Second Claim is based

16 on two theories:  (1) the actions of the individual officers were taken pursuant to an

17 "informal custom or policy" (see FAC at 9:27); and (2) the actions of the individual officers

18 were "ratifi[ed]" by former Chief Steckler and Chief Lucero (see FAC at 9:25-26).

19 Defendants argue that plaintiffs have failed to allege sufficient facts to support a municipal

20 liability claim under either theory.

21      To state a claim where the assertion of municipal liability is based on a theory that

22 the challenged conduct was taken pursuant to a custom or policy, the plaintiff must identify

23 the "specific nature" of the challenged custom or policy.  See AE v. County of Tulare, 666

24 F.3d 631, 637 (9th Cir. 2012).  Under such standard, the Ninth Circuit has found

25 insufficient an allegation that a county "'maintained or permitted an official policy, custom

26 or practice of knowingly permitting the occurrence of the type of wrongs' that [plaintiff]

27 elsewhere alleged [in the complaint]." See id.  Here, plaintiffs allege the challenged

28 custom or policy is an "informal custom or policy that tolerates and promotes the continued

5

1   use of excessive force and cruel and unusual punishment against and violation of civil

2   rights of citizens by City police officers in the manner alleged [elsewhere in the FAC]."

3   (See FAC at 9:27 - 10:1.)  As said allegation lacks any specifics and is substantially similar

4   to the conclusory allegation found inadequate in AE, it is insufficient to state a municipal

5   liability claim.

6          Next, where a municipal liability claim is based on a theory of ratification, the plaintiff

7   must show that a "policymaker," acting with "knowledge of [a subordinate's] alleged

8   constitutional violation," where such knowledge was obtained "before the alleged

9   constitutional violations ceased," nonetheless "approve[d] the subordinate's decision and

10  the basis for it."  See Christie v. Iopa, 176 F.3d 1231, 1238-39 (9th Cir. 1999) (internal

11  citation and quotation omitted).  Here, plaintiffs allege that former Chief Steckler and Chief

12  Lucero, "by failing to discipline or adequately discipline miscreant officers," engaged in a

13  "ratification of the defendant police officers' unconstitutional acts."  (See FAC at 9:20-26.)

14  Plaintiffs, however, fail to allege any facts to support a finding that former Chief Steckler or

15  Chief Lucero had knowledge of the alleged constitutional violations before the violations

16  ceased.  Although it can be reasonably inferred that plaintiffs provided notice of the alleged

17  May 17, 2012 violations at the time they registered their complaint (see FAC ¶ 10), those

18  alleged violations were "complete upon occurrence," see Venegas v. Wagner, 704 F.2d

19  1144, 1145 (9th Cir. 1983) (holding "false arrest or illegal search and seizure" is "complete

20  upon occurrence"), and, consequently, a failure to later discipline officers involved therein

21  cannot constitute ratification, see Christie, 176 F.3d at 1239 (holding plaintiff failed to

22  establish ratification, where policymaker was unaware of violations "before the alleged

23  constitutional violations ceased").[3]

24         Accordingly, the Second Claim is subject to dismissal.

25  _____

26         [3]Although the acts constituting malicious prosecution allegedly occurred after
    plaintiffs registered their complaint (see FAC ¶ 10), plaintiffs do not allege that either former
27  Chief Steckler or Chief Lucero was ever made aware of plaintiffs' allegations of malicious
    prosecution, let alone before the dismissal of the criminal case.  See Christie, 176 F.3d at
28  1239 (holding "constitutional violations" caused by wrongful initiation of criminal
    proceedings "cease" upon dismissal of criminal case).

1 **C.  Third Claim**

2        The Third Claim, titled "Negligent Selection, Training, Retention, Supervision,

3 Investigation, and Discipline," is, as clarified by plaintiffs in their opposition, a municipal

4 liability claim under § 1983, by which plaintiffs allege "inadequate training liability under

5 [City of] Canton v. Harris."  (See Pls.' Opp at 9:21-26.)

6        In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court held that

7 municipal liability can be based on "the inadequacy of police training" where "the failure to

8 train amounts to deliberate indifference to the rights of persons with whom the police come

9 into contact."  See id. at 388.  At the pleading stage, a plaintiff alleging a claim based on

10 inadequate training must "identify what the training . . . practices were," as well as "how the

11 training . . . practices were deficient," and "how the training . . . practices caused [p]laintiffs'

12 harm."  See Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) (citing

13 cases).

14        Here, plaintiffs allege the City "failed to adequate train" its officers "in the proper use

15 of force in the course of their employment as peace officers."  (See FAC ¶ 23).  Plaintiffs,

16 however, fail to identify, even minimally, how the City's training with respect to the use of

17 force is deficient, and, in the absence of such an allegation, "the Court cannot determine if

18 a plausible claim is made for deliberate indifferent conduct."  See Young, 687 F. Supp. 2d

19 at 1150.  Further, in the absence of factual allegations that "plausibly suggest an

20 entitlement to relief," it is "unfair to require the opposing party to be subjected to the

21 expense of discovery and continued litigation."  See AE, 666 F.3d at 638 (internal quotation

22 and citation omitted); see also Iqbal, 556 U.S. at 685 (observing, with respect to civil rights

23 litigation, such "[l]itigation, though necessary to ensure that officials comply with the law,

24 exacts heavy costs in terms of efficiency and expenditure of valuable time and resources

25 that might otherwise be directed to the proper execution of the work of the Government").

26        Accordingly, the Third Claim is subject to dismissal.

27 //

28 //

1    **D.  Fourth Claim**

2         In the Fourth Claim, titled "Injunctive and Declaratory Relief," plaintiffs allege that

3    defendants are "depriving minority citizens" of their constitutional rights as a result of

4    "flawed policies which are encouraged and enforced by deliberate supervisorial indifference

5    to their foreseeable constitutional consequences."  (See FAC ¶ 26.)  Plaintiffs also allege

6    that the "continued use" of such policies "permits and encourages" peace officers to violate

7    the constitutional rights of citizens.  (See id.)  Although plaintiffs fail to identify the injunctive

8    or declaratory relief sought, either in the FAC or their opposition, it appears plaintiffs seek

9    an order enjoining the City from practicing the above-referenced "policies" and/or an order

10   declaring such policies to be unconstitutional.

11        Defendants argue the Fourth Claim is subject to dismissal for failure to allege

12   sufficient facts to support a finding that plaintiffs have standing to seek equitable relief.

13        A plaintiff "bears the burden of demonstrating that he has standing for each type of

14   relief sought."  See Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009); see, e.g.,

15   City of Los Angeles v. Lyons, 461 U.S. 95, 109-11 (1983) (holding that although plaintiff's

16   claim for damages based on use of chokehold during arrest "appear[ed] to meet all Article

17   III requirements," plaintiff lacked standing to seek injunctive relief to prevent further use of

18   chokeholds by peace officers because of the "speculative nature of his claim that he will

19   again experience injury as the result of that practice even if continued").  "To seek

20   injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is

21   concrete and particularized; the threat must be actual and imminent, not conjectural or

22   hypothetical; it must be fairly traceable to the challenged action of the defendant; and it

23   must be likely that a favorable judicial decision will prevent or redress the injury."

24   Summers, 555 U.S. at 493 (internal quotation and citation omitted).

25        Here, as noted, plaintiffs allege certain of the defendants arrested M. Mendy without

26   probable cause, used excessive force against M. Mendy, threatened to use force against J.

27   Mendy, and caused false charges to be filed against plaintiffs in response to plaintiffs'

28   having registered a complaint with the Department.  Those particular alleged constitutional

8

1    violations had ceased prior to the filing of the instant action, see Christie, 176 F.3d at 1239;

2    Venegas, 704 F.2d at 1145, and, consequently, the harm plaintiffs allege they incurred as a

3    result of the alleged violations does not provide them with standing to seek equitable relief.

4    As plaintiffs do not allege facts to support a finding that they otherwise face an "actual and

5    imminent" threat from defendants, plaintiffs fail to allege facts to support a finding that they

6    have standing to seek equitable relief.

7         Accordingly, the Fourth Claim is subject to dismissal.

8                      **CONCLUSION**

9        For the reasons stated above,

10        1. Defendants' motion to dismiss is hereby GRANTED, as follows:

11          a. To the extent the First Claim is alleged against the City, the Department,

12    former Chief Steckler, and Chief Lucero, the First Claim is DISMISSED.

13          b. The Second, Third, and Fourth Claims are DISMISSED.

14        2. In the event plaintiffs wish to amend for purposes of curing any or all of the

15    above-referenced deficiencies, plaintiffs shall file a Second Amended Complaint no later

16    than March 7, 2014.  In any Second Amended Complaint, plaintiffs may amend to cure the

17    deficiencies noted above but may not add new claims or defendants without first obtaining

18    leave of court.  See Fed. R. Civ. P. 15(a)(2); Fed. R. Civ. P. 16(b)(4).

19        3. If plaintiffs do not file a Second Amended Complaint within the time provided, the

20    instant action will proceed on the remaining claims in the First Amended Complaint.

21        **IT IS SO ORDERED.**

22

23    Dated:  February 12, 2014

24                                   MAXINE M. CHESNEY
                                  United States District Judge

25

26

27

28