IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN RAY MENDY, MARY MENDY,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF FREMONT, et al.,<br><br>　　　　Defendants. | No. C-13-4180 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Before the Court is defendants' "Motion to Dismiss Plaintiffs' Second Amended Complaint," filed March 27, 2014.[1] Plaintiffs John Ray Mendy ("J. Mendy") and Mary Mendy ("M. Mendy") have filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

//

---

[1] Defendants are the City of Fremont ("the City"), Fremont Police Department ("the Department"), former Chief of Police Craig Steckler ("former Chief Steckler"), Chief of Police Richard Lucero ("Chief Lucero"), Community Service Officer Lori Codey ("CSO Codey"), Peace Officer Joel Luevano ("Officer Luevano"), Sergeant Jeffrey Campbell ("Sgt. Campbell"), Sergeant Curtis Codey ("Sgt. Codey"), and Sergeant Matthew Bocage ("Sgt. Bocage").

[2] By order filed April 30, 2014, the Court took the matter under submission.

## BACKGROUND

Plaintiffs, who reside in Fremont, California, allege that beginning "on or about 2004 – 2005," there have been "at least 40 or so contacts between CSO Codey and [p]laintiffs" in which CSO Codey "either ticketed or caused the towing of [plaintiffs'] vehicles, in knowingly wrongful fashion." (See Second Amended Complaint ("SAC") ¶ 8.) Plaintiffs also allege that one such contact occurred on May 17, 2012, and that, on said date, plaintiff M. Mendy, after "observing CSO Codey commence a towing," exited her home and "verbally (only) expressed her objections to the towing," as well as her "feelings regarding CSO Codey's perceived romantic/flirtatious overtures to her husband, [plaintiff] J. Mendy," which comments were not "complimentary." (See id.) Plaintiffs further allege that Officer Luevano, who had "arrived in the street," ordered M. Mendy to "get back" and to "place her hands behind her back." (See id.) According to plaintiffs, although M. Mendy "obeyed," she was placed under arrest "in a deliberately forceful manner," was falsely accused of being "intoxicated," and was taken to jail, where she stayed "for at least four hours," after which time she was "released without the assertion of any violation of law." (See id.) Plaintiffs also allege that after M. Mendy had been "driven away," J. Mendy was "informed" by Sgt. Bocage, who was "in the presence" of Sgt. Codey and "other officers," that "every time they saw him (J. Mendy) they would draw a gun on him." (See SAC ¶¶ 8, 27.)

Plaintiffs allege that at the scene of the above-described incident, they gave "notification" to the officers at the scene of their "intent to formally complain," that on May 18, 2012, they made a "similarly-stated intent to complain,"[3] and, further, that on May 19, 2012, they told Sgt. Campbell on the telephone that they "would be commencing a formal complaint." (See SAC ¶ 14.) Plaintiffs also allege that, on June 12, 2012, they "went to the Department to personally register a complaint with Internal Affairs" and "separately met with Internal Affairs investigators." (See SAC ¶ 10.) Plaintiffs further allege that, "during the complaint," they were advised by Sgt. Campbell that former Chief Steckler "would

---

[3] The individual to whom the May 18, 2012 statement was made is not identified in the SAC.

2

made [sic] the final decision as to whether or not anyone would be subject to discipline." (See id.) According to plaintiffs, "no discipline was imposed." (See id.)

Plaintiffs allege that while they were at the Department on June 12, 2012, they were "informed" by an "as-yet unidentified supervisor of CSO Codey" that, if they proceeded with their complaint, "the Department would find something with which to criminally charge [p]laintiffs." (See id.) Plaintiffs allege they nonetheless requested an investigation into the events occurring on May 17, 2012, and that defendants then "falsely represented the facts, events, and circumstances which occurred on May 17, 2012 . . . to the Alameda County District Attorney's Office" (see id.; see also SAC ¶¶ 14, 38), which, "relying upon the misrepresentations," filed a criminal complaint "falsely accusing" plaintiffs of violating § 148(a)(1) of the Penal Code (see SAC ¶ 10). The criminal case, plaintiffs allege, "culminat[ed] in a favorable judicial dismissal" on December 18, 2012, "the day of trial." (See id.)

Based on the above allegations, plaintiffs assert claims under 42 U.S.C. § 1983, as well as a state law claim for malicious prosecution.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the

3

nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

By motion filed December 26, 2013, defendants moved to dismiss certain claims alleged in plaintiffs' First Amended Complaint ("FAC"), which motion the Court granted by order filed February 12, 2014. In said order, the Court afforded plaintiffs leave to amend the dismissed claims, and plaintiffs thereafter filed the SAC. In the instant motion, defendants argue that plaintiffs have failed to cure the deficiencies identified in the Court's February 12, 2014 order.

The Court considers each of the challenged claims in turn.

**A. First Claim**

The First Claim is titled "Violation of Civil Rights - 42 U.S.C. § 1983." When pleaded in the FAC, the First Claim consisted of allegations against five defendants sued in their individual capacities, and contained no allegations to support a municipal liability claim. Consequently, the Court dismissed the First Claim to the extent it was alleged against the City and the Department, as well as against former Chief Steckler and Chief Lucero, each of whom had been sued only in his official capacity.

In the SAC, plaintiffs have realleged in the First Claim their claims against the five defendants sued in their individual capacity. In addition, plaintiffs have included in the First Claim a claim for municipal liability alleged against the City and former Chief Steckler, who, again, is not sued as an individual, but only in his "official capacity." (See SAC ¶ 4); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (holding where claim is brought against official in his "official capacity," claim is "treated as a suit against the entity"). Defendants

4

argue that to the extent the First Claim has been amended to include a municipal liability claim, the First Claim is subject to dismissal because, according to defendants, the claim is based solely on conclusory allegations. See Iqbal, 556 U.S. at 678.  The Court disagrees.

The municipal liability claim alleged in the First Claim is now based on an allegation that former Chief Steckler learned of plaintiffs' intent to formally complain about the May 17, 2012 incident, and that, thereafter, he "create[d] criminal charges" that were "fabricated" and recommended to the District Attorney that those charges be filed against plaintiffs. (See SAC ¶ 14.)  In light of plaintiffs' additional allegation that former Chief Steckler was at that time the Department's "final policymaker[ ]" (see SAC ¶ 4), the Court finds plaintiffs' allegations sufficient at the pleading stage to support a municipal liability claim.  See Christie v. Iopa, 176 F.3d 1231, 1235-36 (9th Cir. 1999) (holding "municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority"; noting prosecutor's filing of criminal charges could subject county to liability under § 1983 for alleged selective prosecution if prosecutor "possessed final policymaking authority to decide who to prosecute") (internal quotation and citation omitted).

Accordingly, the municipal liability claim included within the First Claim is not subject to dismissal.

**B. Second Claim**

In the Second Claim, titled "Violation of Civil Rights – 42 U.S.C. § 1983 – Monell," plaintiffs allege a municipal liability claim based on the theory that the officers who assertedly violated plaintiffs' constitutional rights did so pursuant to one or more municipal practices or customs.  A plaintiff may establish municipal liability by demonstrating "the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity."  See Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010).

In its prior order, the Court dismissed the Second Claim for the reason that plaintiffs had failed to identify the practice or custom on which the claim was based.  Defendants

5

argue that plaintiffs have failed to cure the deficiency identified by the Court.

Contrary to defendants' argument, plaintiffs have sufficiently identified two asserted practices or policies. First, plaintiffs allege that the City has a "system, practice, and policy" under which, when a "civilian complain[s] of . . . abuse" by an officer, the officer is "permitted" to "create supplemental reports and such for the purpose of recommending, to the Alameda County District Attorney's office, criminal charges which reflect[ ] material misrepresentations of the incident." (See SAC at 11:17-26.) Second, plaintiffs allege that the City has a "policy, custom, or practice," identified by plaintiffs as "hurt a person – charge a person," under which, when an officer "wrongly hurts a person," the officer "will secure the filing of a criminal charge against the person." (See SAC at 11:27 - 12:1.)

To the extent the Second Claim also includes references to a third alleged practice or custom, however, the Court agrees that plaintiffs have failed to identify a cognizable policy. Plaintiffs allege that the City "officially train[s]" its officers in a manner that "satisfie[s] State and municipal training standards," but that it "ignored the[ ] individual [d]efendant officers' misconduct and other officers' misconduct,[4] as specifically alleged" in the SAC. (See SAC at 10:17-22.) An allegation that several officers on a few occasions failed to conform their behavior to the adequate training they received is not sufficient to plead a municipal policy, practice, or custom. See Thompson v. City of Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989) (noting "random acts or isolated events [are] insufficient to establish custom"); Meehan v. County of Los Angeles, 856 F.2d 102, 106-07 (9th Cir. 1988) (holding "[p]roof of unconstitutional assaults by [county's] agents on [two separate dates], standing alone, does not support a finding of liability against the [c]ounty"); see also Mulholland v. The Government County of Berks, 706 F.3d 227, 239 (3rd Cir. 2013) (holding county could not be held liable for employee's alleged unconstitutional act, where act was

---

[4] In the SAC, plaintiffs point to the "officers in the case of Bass v. City of Fremont, et al., USDC (N.D. Cal.) Case No. 12-4943 JSC." (See SAC at 9:25 - 10:1; see also Pls.' Req. for Judicial Notice ("RJN"), filed April 9, 2014, Ex. A.) According to the plaintiff in Bass, two City officers, neither of whom was involved in the incidents alleged by plaintiffs here, falsely arrested him for driving under the influence and in the course thereof used excessive force. (See RJN Ex. A ¶ 12.)

6

result of employee's "deviation" from county practices).

Accordingly, the Second Claim is subject to dismissal solely to the extent it is based on the third of the above-discussed theories.

**C. Third Claim**

The Third Claim, titled "Negligent Selection, Training, Retention, Supervision, Investigation, and Discipline," is, as clarified by plaintiffs in their opposition to the prior motion to dismiss, a municipal liability claim under § 1983, by which plaintiffs allege deficient training. See City of Canton v. Harris, 489 U.S. 378, 388 (1989) (holding municipal liability can be based on "the inadequacy of police training" where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact").

In its prior order, the Court dismissed the Third Claim, for the reason that plaintiffs had failed to identify the training practice at issue or to state how any such training practice was deficient, and, further failed to allege facts to support a finding that any assertedly deficient training practice caused the constitutional violations at issue. See Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009). Defendants argue that plaintiffs have failed to cure said deficiencies. The Court agrees.

In the SAC, plaintiffs have added an allegation that the City "failed to train and supervise their employees" and thus did not "prevent[ ] falsely-created criminal charges in retaliation for the exercise of a civilian's right to freedom of speech." (See SAC ¶ 22.) Such allegation fails to cure the deficiency identified in the Court's prior order as plaintiffs, again, fail to identify the nature of the asserted training deficiency. See AE v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (finding municipal liability claim subject to dismissal where plaintiff failed to allege "facts regarding the specific nature" of challenged policy).

Plaintiffs have also added an allegation that the City "failed to adequately train [its peace officers] . . . in the proper use of force in the course of their employment as peace officers while responding to insulting verbal 'conduct.'" (See SAC ¶ 24.) In its prior order,

7

the Court, for the reasons discussed above, found insufficient plaintiffs' allegation that the City "'failed to adequately train' its officers 'in the proper use of force in the course of their employment as peace officers.'" (See Order, filed February 12, 2014, at 7:14-15 (quoting FAC).) The addition of the phrase "while responding to insulting verbal 'conduct'" sheds no more light than the FAC on the manner in which the City's training as to the use of force was inadequate, and, consequently, plaintiffs have failed to cure the deficiency identified in the Court's prior order.

Accordingly, to the extent the Third Claim is based on the two theories discussed above, the Third Claim is subject to dismissal without further leave to amend.

Lastly, to the extent plaintiffs seek to include in the Third Claim a claim for "deliberate indifference" based on the City's alleged failure to "implement and maintain proper procedures that would have required that the attempt to charge a civilian with a crime more than 48 hours following the date of the incident [ ] be reviewed by in-line supervisorial officials so as to verify the legitimacy of such charges" (see SAC ¶ 22), plaintiffs, as discussed below, fail to state a cognizable municipal liability claim.[5]

Where a plaintiff seeks to base a municipal liability claim on a theory that the municipality caused the constitutional violations "through its omissions," the plaintiff must allege that "the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." See Gibson v. County of Washoe, 290 F.3d 1175, 1186 (9th Cir. 2002). To establish "deliberate indifference," the plaintiff must "show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." Id. Here, plaintiffs fail to allege facts to support a finding that, other than in the instant case, any officer submitted fabricated criminal charges to a prosecutor more than 48 hours after an arrest to retaliate against a civilian or to cover up some type of wrongful conduct. Consequently,

---

[5] It would appear plaintiffs seek to make such claim in the alternative to their claim, included in the Second Claim, that the City has a practice of affirmatively authorizing its officers to make false reports to cover up improper conduct.

8

1  plaintiffs fail to allege facts sufficient to support a finding that the City was on actual or
2  constructive notice of the need to implement a policy to review all criminal charges
3  submitted by an officer more than 48 hours after an arrest.  Because this particular theory
4  was raised for the first time in the SAC, however, and it is possible plaintiffs could allege
5  additional facts in support thereof, the Court will afford plaintiffs leave to amend to plead a
6  claim based on the above-referenced alleged failure to implement supervisorial review.
7        Accordingly, to the extent the Third Claim is based on the above-discussed asserted
8  failure to implement supervisorial review, the claim will be dismissed with leave to amend,
9  and in all other respects will be dismissed without leave to amend.
10  **D.  Fourth Claim**
11        In the Fourth Claim, titled "Injunctive and Declaratory Relief," plaintiffs allege that
12  defendants are "depriving" citizens of their constitutional rights as a result of "flawed
13  policies." (See FAC ¶ 27.)  Plaintiffs also allege that the "continued use" of such policies
14  "permits and encourages" peace officers to violate constitutional rights.  (See id.)  In its
15  prior order, the Court dismissed the Fourth Claim, because plaintiffs failed to allege any
16  facts to support a finding that they had standing to seek such equitable relief.  See
17  Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009) (holding plaintiff lacks standing
18  to seek injunctive relief unless plaintiff "is under threat of suffering injury in fact that is
19  concrete and particularized"; further holding "the threat must be actual and imminent, not
20  conjectural or hypothetical" and "must be fairly traceable to the challenged action of the
21  defendant," and "it must be likely that a favorable judicial decision will prevent or redress
22  the injury") (internal quotation and citation omitted).  Defendants argue that plaintiffs have
23  failed to cure such deficiency.  The Court agrees.
24        At the outset, the Court notes that the Fourth Claim is subject to dismissal because it
25  does not assert a substantive claim, but, rather, attempts to identify equitable remedies that
26  might be properly awarded in the event that defendants are found to have violated
27  //
28  //

§ 1983.[6]

Moreover, although plaintiffs have adequately pleaded violations of § 1983,[7] plaintiffs fail to allege any facts suggesting plaintiffs are under an "actual and imminent" threat that City officers will repeat such conduct. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 109-11 (1983) (holding that although plaintiff's claim for damages based on use of chokehold during arrest "appear[ed] to meet all Article III requirements," plaintiff lacked standing to seek injunctive relief to prevent further use of chokeholds by peace officers, given the "speculative nature of his claim that he [would] again experience injury as the result of that practice even if continued"). Nor can plaintiffs base the claim for injunctive relief on the statement, allegedly made to J. Mendy by Sgt. Bocage on May 17, 2012, that "every time he sees him, he will draw his gun on him," (see SAC ¶¶ 8, 27); as a matter of law, a § 1983 claim cannot be based on statements of such nature. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (holding, where complaint alleged defendant "threatened [plaintiff] with bodily harm" if plaintiff pursued "legal redress" for a prior incident of excessive force, complaint "fail[ed] to state a cause of action under section 1983"; rejecting argument that "a threat to do an act prohibited by the Constitution is equivalent to doing the act itself").

Accordingly, the Fourth Claim will be dismissed without further leave to amend.

## CONCLUSION

1. For the reasons stated above, defendants' motion to dismiss is hereby GRANTED in part, as follows:

    a. The Second Claim is DISMISSED solely to the extent it is based on the theory discussed above at pages 6:11 - 7:3.

---

[6] Indeed, plaintiffs have included in their Prayer for relief a request for injunctive relief (see SAC, Prayer ¶ 6), which defendants have not challenged.

[7] Specifically, the SAC alleges that M. Mendy was arrested without probable cause, that she was subjected to excessive force by the use of handcuffs during the course of her arrest, and that defendants caused false charges to be filed against both plaintiffs in response to plaintiffs' having engaged in protected speech.

    b. The Third Claim is DISMISSED with limited leave to amend as discussed above.

    c. The Fourth Claim is DISMISSED.

 2. In all other respects, the motion is DENIED.

 3. Plaintiffs' Third Amended Complaint, if any, shall be filed no later than May 23, 2014. In any Third Amended Complaint, plaintiffs may not otherwise add new claims or defendants without first obtaining leave of court. See Fed. R. Civ. P. 15(a)(2); Fed. R. Civ. P. 16(b)(4).

 4. If plaintiffs do not file a Third Amended Complaint within the time provided, the instant action will proceed on the remaining claims in the Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: May 2, 2014

MAXINE M. CHESNEY
United States District Judge